IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 13-cv-03391-MJW

STEVEN WAYNE BASSETT,

Plaintiff,

v.

MICHAEL KLINKLER,
JASON LOMBARD, and
CDOC EMPLOYEE WHO SPOKE TO PARAMEDICS,

Defendants.

---

**ORDER GRANTING
DEFENDANTS LOMBARD AND KLINKLER'S MOTION TO DISMISS
(Docket No. 46)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

Stephen Bassett was among a number of inmates involved in a car accident while being transported by prison staff.  Defendant Michael Klinkler, a guard, was driving the vehicle.  Defendant Jason Lombard, another guard, was riding shotgun.  An unidentified defendant, a Colorado Department of Corrections ("CDOC") employee, declined to let paramedics take Bassett to a private hospital.  Bassett sustained injuries, which he attributes to the "flagrant and callous disregard" shown by Defendants by transporting him in "an unsafe vehicle without seatbelts" and by driving "in an unsafe manner in violation of traffic laws."  He sues under 42 U.S.C. § 1983 alleging a violation of the Eight Amendment, as well as under Colorado tort law.  Defendants have moved to dismiss under Rules 12(b)(1) and (b)(6).  Acting by consent under 28 U.S.C. § 636(c), the Court GRANTS the motion to dismiss in full.

2

## **Factual Allegations**

As alleged by Bassett (Docket No. 53, p.4), the accident occurred on December 17, 2012.  Bassett was "shackled and chained" and thus "wholly dependent upon the Defendants" for his safety.  While driving through Colorado Springs, Klinkler "drove recklessly, following another vehicle too closely in violation of C.D.O.C. policy and state law."  Lombard "rode shotgun—aware of this reckless driving" but doing "nothing to prevent it or suggest a safe legal manner."  "When the vehicle in front of the transport had to make an emergency stop, the transport slammed into it."  Bassett "slammed into the cage he was in, suffering a laceration to his face."

The incident caused head and neck pain, which Bassett "reported to the CDOC medical staff upon arrival."  Ever since, Bassett "has had limited pain free mobility of his neck, and continual persistent headaches.  He has had recurring nightmares about the crash, disrupting his sleep."  He has suffered from "panic attacks, flashbacks, and extreme anxiety" during other transports.

"In the immediate aftermath of the crash," a paramedic told Defendants to take the inmates to Memorial Hospital for "treatment and screening."  Defendants did not do so.  Further, the unnamed Defendant "signed waivers of refusal on behalf of [Bassett] without even asking [Bassett] if he refused, which he would not have if asked."  The prison has yet to diagnose Bassett and inform him of the full extent of his injuries.

Bassett presses his claim against Defendants in their individual and official capacities.  He asks for compensatory and nominal damages, as well as declaratory or injunctive relief compelling CDOC to install seatbelts in their transport vehicles.

3

## Discussion

Under Rule 12(b)(6), the Court must accept the facts alleged by Bassett as true; further, if inferences must be drawn, the Court must draw them in Bassett's favor. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010).  Only factual allegations are to be accepted as true; allegations of legal conclusions—for example, that conduct was "unreasonable," "negligent," "willful and wanton," and the like—are not included in the Court's analysis. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Generally speaking, only the Complaint is to be considered; facts and documents that the parties have brought forward while briefing the motion to dismiss usually have no bearing on the motion.  *See Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

Once the set of operative facts is established according to the foregoing rules, the Court must decide whether those facts adequately state grounds for relief.  It is not necessary for Bassett to allege a prima facie case including every last element of his legal claims—but he must put forward enough facts for the Court to infer that his claims are at least plausible.  *Khalik v. United Air Lines*, 761 F.3d 1188, 1191–92 (10th Cir. 2012).

Defendants argue that:

- Claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment;

- Claims for punitive damages are not plausibly alleged;

- Claims against Defendant Lombard fail for lack of personal involvement;

4

- Claims for money damages against Defendants in their individual capacities are barred by qualified immunity; and

- Claims under state law are barred by sovereign immunity and by the statute of limitations.

(Docket No. 46.)  Notably, Defendants' motion makes no argument that the Complaint fails to state a claim against Defendant Klinker and the unnamed Defendant for injunctive or declaratory relief.  But buried within Defendants' qualified-immunity theory is an argument that the alleged facts fail to show any constitutional violation.  Bassett's § 1983 claim is entirely premised on such a violation—and therefore, if Defendants are right, Bassett's claim necessarily fails as to all remedies and defendants, in any capacity.

## I.   Stating A Federal Claim for Car-Accident Injuries

Ordinary negligence is not actionable under § 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986).  Further, "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (internal quotations omitted).  To state a claim, Bassett must show that the risk Defendants incurred is a risk that today's society would not tolerate.  *See Helling v. McKinley*, 509 U.S. 25, 36 (1993).  Moreover, Defendants' lack of care must meet the "deliberate indifference" standard—by "knowingly and unreasonably disregarding" that risk.  *Id.* at 846.

Car accidents involving inmates in custody are not uncommon.  As a result, there is an extensive body of case law on whether inmates have actionable § 1983 claims due to such accidents.  A leading case is *Carrasquillo v. City of New York*, 324 F. Supp.

5

2d 428 (S.D. N.Y. 2004).  There, the plaintiff alleged that the prison transport drove at

excessive speeds despite icy conditions, while transporting the plaintiff in a bus without

seatbelts.  *Id.* at 434.  In dismissing plaintiff's § 1983 claim, the court explained the

established legal standards:

> Auto accidents do not, in and of themselves, give rise to federal
> causes of action.  Individuals do not have a constitutional right (1) to be
> free from a government employee's negligence, even if it causes an injury,
> (2) to have the government protect them from such an injury, or (3) to
> have the government investigate the cause of such an injury.  Plaintiff's
> claims stemming solely from the circumstances of the bus accident are
> therefore not actionable under 42 U.S.C. § 1983.
>
> First, Plaintiff alleges that the bus driver . . ., by causing Plaintiff's
> injuries, violated Plaintiff's Eighth Amendment rights.  But neither the
> Constitution, nor any federal statute guarantees a prisoner's right to non-
> negligent driving by government employees.  Such claims fall under the
> purview of state tort law, not § 1983.  The Supreme Court held in *Daniels
> v. Williams,* 474 U.S. 327 (1986), where an inmate sued a police officer
> under § 1983 for negligently inflicting injuries, that the Due Process clause
> would be "trivialized" if it were extended to cover injuries caused by the
> negligent action of state officials.  *Id.* at 332.  Section 1983 claims are
> therefore "not to be used to duplicate state tort law at the federal level."
> *Washington v. District of Columbia,* 802 F.2d 1478, 1480 (D.C. Cir. 1986).
>
> Plaintiff alleges that Defendant Doe was reckless, not merely
> negligent, when he drove at an excessive speed in icy road conditions.
> But this adds nothing of legal significance to Plaintiff's claim.  The Seventh
> Circuit held in *Hill v. Shobe,* 93 F.3d 418, 421 (7th Cir. 1996), that
> "[a]llegations of a public official driving too fast for the road conditions are
> grounded in negligence, not criminal recklessness" (citing *Apodaca v. Rio
> Arriba Cty. Sheriff's Dep't,* 905 F.2d 1445, 1446–47 (10th Cir. 1990)).
> Furthermore, deaths and injuries resulting from a state employee's lack of
> due care do not implicate the Constitution.  *Id.* (citing *Davidson v. Cannon,*
> 474 U.S. 344, 347 (1986)).
>
> . . .
>
> Second, Plaintiff asserts that the City is liable for causing his
> injuries in the first place by failing to provide him with a seatbelt while he
> was forced to ride handcuffed in the ill-fated bus on February 7, 2003. . . .

6

This claim must also be dismissed, since failure to provide seatbelts to prisoners is not a constitutional violation under § 1983. . . .

. . . [W]hile the Second Circuit has not specifically dealt with the issue of seatbelts in state or municipal vehicles, two other Courts of Appeals have held that a municipality's decision not to provide prisoners with seatbelts does not violate prisoners' federal rights.  The Eighth Circuit has held that a municipality's "decision to use patrol wagons without seatbelts" was lawful, since it was based on the legitimate penological concern that detained "individuals transported in the wagon, even those who were handcuffed, could use the seatbelt as a weapon to harm an officer, other passengers being transported in the wagon, or even themselves."  *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 907 (8th Cir. 1999).  The Tenth Circuit has noted that "a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension" because the "eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted."  *Dexter v. Ford Motor Co.,* 92 F. App'x. 637, 641 (10th Cir. 2004) (unpublished opinion).

Plaintiff tries to bolster his claim by noting that New York State law requires seatbelts on busses.  While this may help his tort claim against the City in State court, it is irrelevant to whether denial of seatbelts to prisoners violates prisoners' constitutional or federal rights.  Accordingly, this claim against the City is dismissed.

*Carrasquillo*, 324 F. Supp. 2d at 436–38 (internal citations modified).  The same result

has been reached in countless other cases of prison-transport accidents.  *See, e.g.*,

*Yates v. LeBlanc*, 2012 WL 6694066 (M.D. La. Dec. 21, 2012) (no § 1983 claim where

driver failed to stop or yield at a stop sign); *Francis v. J. Levy Dabadie Corr.*, 2010 WL

686515 (W.D. La. Feb. 22, 2010) (no § 1983 claim where driver lost focus on his driving

and hit a pole); *Bird v. Chatham Cnty. Det. Ctr.*, 2008 WL 68842 (S.D. Ga. Jan. 2, 2008)

(no § 1983 claim where driver was distracted by his cell phone and the radio); *Young v.*

*Michigan Dept. of Corrs.,* 2007 WL 2214520 (E.D. Mich. July 27, 2007) (no § 1983 claim

where driver exceeded the speed limit and inmates had no seatbelts); *Jones v. Collins,*

7

2006 WL 1528882 (S.D. Ill. June 1, 2006) (no § 1983 claim where driver backed into another vehicle).

This is not to say that such accidents are never actionable.  For example, in *Kemp v. Webster*, the court allowed the claim to proceed where the plaintiff alleged: (1) no use of a seatbelt, (2) snowy weather and icy roads; (3) driver making erratic lane changes; (4) driver following too closely; and (5) vehicle fishtailing.  Further, the driver's recklessness persisted despite warnings from other guards.  *Kemp v. Webster*, No. 09-cv-00295-RBJ-MJW, 2012 WL 4919615, at *6 (D. Colo. Oct. 16, 2012) (denying summary judgment).  Combined, those factors showed that Defendants "knowingly subject[ed] an inmate to a sufficiently serious risk of harm." *Id.* at *7 (citing *Farmer v. Brennan*, 511 U.S. at 834).  Similarly, in *Banks v. Dart*, 2012 WL 4852993 (N.D. Ill. Oct. 10, 2012), the plaintiff alleged not only that the driver drove recklessly, at high speeds, and close to other vehicles, but that the driver was drinking alcohol as well.  In *Miller v. Bishop*, 2009 WL 1748223 (E.D. Ark. June 19, 2009), the driver reached speeds of 70–78 mph in a construction area while talking on his cell phone.  In *Brown v. Atkinson*, 2009 WL 1586681 (W.D. Ark. June 4, 2009), the defendant "drove at a high rate of speed exceeding 50 miles per hour (m.p.h.) through city streets and up to 100 m.p.h. on the freeway and interstate," when "it was obvious to everyone that [defendant] was under the influence of a drug because he continually tuned the radio to different stations, turned the heat and air on and off, constantly took his mind off the traffic, and at times seemed to be in a state" of unconsciousness, causing "several close calls as they weaved in and out of traffic before the van finally tumbled over and wrecked on a

8

off ramp." And in *Pendleton v. Schroeder*, 1998 WL 273000 (N.D. Cal. May 22, 1998), the prison's practice was to drive convoy vans "dangerously fast and close so that no other cars could merge in between them." Like *Kemp*, these cases show knowing conduct creating an intolerable risk.

Here, Bassett has alleged only that (1) Klinkler was following the car in front of the transport vehicle too closely; (2) Lombard said nothing about Klinkler's tailgating; (3) the transport vehicle had no seatbelts; and (4) the car in front came to a sudden stop. These facts are indistinguishable from the garden-variety negligence cases in which no § 1983 claim is stated, and do not rise to the level of deliberate indifference shown in *Kemp* and similar cases. Accordingly, Bassett has not stated a claim under the Eighth Amendment and § 1983.

## II.   Stating a State-Law Suit Against Public Employees

Defendants argue, among other things, that Bassett's state law claims are barred because he did not comply with the prerequisites for suing the state under the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24–10–101 *et seq.* That statute provides:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

C.R.S. § 24–10–109(1)

9

The statutory notice provisions apply when federal courts hear Colorado tort claims under supplemental jurisdiction. *Renalde v. City & Cnty. of Denver,* 807 F.Supp. 668, 675 (D.Colo.1992).  Failure to file the required written notice "operates as a jurisdictional bar to the lawsuit." *Aspen Orthopedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.,* 353 F.3d 832, 839 (10th Cir.2003).  Moreover, at the Rule 12(b) stage, "a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal." *Id.* at 840.  "When a plaintiff fails to plead compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss, the court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice provisions." *Id.*; see also *Sexton v. Hickenlooper*, No. 13-cv-01008-MSK-KMT, 2014 WL 1091936, at *7 (D. Colo. Mar. 19, 2014).

Defendants argue that this notice has not been pleaded, and could not be pleaded because notice was actually given over a year after the accident.  (*See* Docket No. 46-1.)  The Court does not take notice of facts outside the complaint—but it is true that Bassett has not alleged compliance with the statute.  Further, his objection to Defendants' motion to dismiss does not dispute the point or otherwise suggest that an amended pleading could cure the defect.  Accordingly, the Court is without subject-matter jurisdiction to hear Bassett's state-law claims.

## **Order**

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Docket No. 46) is GRANTED.  It is further ORDERED that Bassett's federal-law claims are DISMISSED under Rule 12(b)(6) and his state-law claims are

10

DISMISSED under Rule 12(b)(1).  The Clerk of Court is directed to enter judgment

against Plaintiff and close this case.


Dated:	October 27, 2014			_/s/ Michael J. Watanabe_____
	Denver, Colorado			Michael J. Watanabe
						United States Magistrate Judge